Filed 3/19/13  P. v. Balinton CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DELPHINO BALINTON,<br><br>    Defendant and Appellant. | A132571<br><br>(City & County of San Francisco<br>Super. Ct. Nos. 2383839/209447) |

In August 2009, the San Francisco District Attorney charged appellant Delphino Balinton with five sex crimes:  (1) kidnapping to commit rape, sodomy, and oral copulation; (2) forcible rape; (3) forcible oral copulation; (4) forcible oral copulation of a minor; and (5) assault with intent to commit sodomy.  In connection with counts two and three, the information further alleged that appellant kidnapped the victim.  As well, the information alleged that appellant suffered two serious felony strike convictions.

A jury convicted appellant of forcible rape, forcible oral copulation, and forcible oral copulation of a minor, and found the kidnapping enhancements true as to counts two and three.  Additionally, the jury convicted appellant of simple assault, a lesser included offense to count five.  The jury was unable to reach a verdict on count one and hence the court declared a mistrial on that count.  Finally, the court found true the allegation that appellant suffered a prior robbery conviction in 1985.

The court sentenced appellant to an aggregate term of 55 years to life.  Appellant challenges the jury instructions on the kidnapping enhancements.  We affirm the judgment.

1

## I.  FACTUAL BACKGROUND

A.  *The Crimes and Investigation*

In the summer of 2001, 16-year-old C.C. came to San Francisco from Montana, to attend a summer art program offered through the Academy of Art Institute.  On the evening of July 21, 2001, C.C. left her dorm after dinner to go for a walk.  She was on Sixth Street where it intersects with Jessie Street when she saw someone standing and mumbling, but she kept walking.  A person grabbed C.C. from behind and pulled her "back a ways, back into the alleyway."  C.C. was not able to get away.  The assailant pulled her inside a large cardboard box with openings cut out and pieces of cloth hanging over the openings.  C.C. first said she guessed that he pulled her 40 to 50 feet into the alley.  Later she described the distance as the distance between the witness stand and the prosecutor's table.

The assailant pushed C.C. down and pulled her pants to her ankles; C.C. tried to push him away but could not.  The assailant raped C.C.; he was not wearing a condom but she was unsure if he ejaculated.  He also forced her to orally copulate him, ejaculated in her mouth and forced her to swallow.  Finally, when she was on her knees and pushing against the concrete, he slightly penetrated her anus.  C.C. tried to knock him back, without success.  The assailant sat up and pulled C.C. onto his lap.  At that point she got up and ran back to the dorm.

Later that evening, C.C. was taken to a hospital where she was examined by a sexual assault nurse.  With respect to hymenal trauma, C.C. had "mild swelling."  She also suffered some "tiny superficial tears or abrasions" of the labia.  Swabs were taken from C.C.'s mouth, vagina, and anus.  The swabs, along with C.C.'s underwear from the night of the attack, were preserved in a locked freezer under police custody.

C.C. described the assailant as an African-American male, about 45 years old, five feet nine inches tall, weighing around 220 pounds with a "big belly."

C.C. did not want to testify and signed an "affidavit of release of prosecution." The case was placed on inactive status pending identification of the suspect.

In 2008, a "cold hit" of DNA from sperm found on C.C.'s underpants matched a reference sample of appellant's DNA. The police contacted and interviewed appellant in San Quentin. Appellant indicated he was in the area during the period of the sexual assaults. He denied having sex within anyone in the alleys south of Market Street. He had a girlfriend at the time, and they would go to a hotel to have sex. Shown a photograph of C.C., appellant said he did not recognize her. When asked if there was any chance that his DNA could end up in evidence collected in the present sexual assault case, he said "no."

B. *Defense*

Appellant's primary defense was that he was not the assailant. In his opening statement, defense counsel cited the fact that C.C. described the assailant as having a "big belly" and weighing 220 or 245 pounds, which was inconsistent with appellant's appearance. Further, he argued that there was no ejaculate from the rape, C.C. was forced to swallow the ejaculate, and therefore the stain on her underwear could not come from having sex with appellant. Rather, the ejaculate came from the cardboard box. She was attacked at a time when appellant frequented the alleys south of Market Street, was addicted to crack cocaine, and would trade sex for drugs.

Appellant testified, denying that he attacked C.C. During the summer of 2001, he spent time in the area of Jessie and Sixth Streets south of Market Street. He traded drugs for sex, and had sex "on the spot in the alley." He would use whatever was in the alley—mattresses, cardboard, and sleeping bags.

Appellant denied telling the police in 2008 that he would not have sex in the street or alleys. Further, the police did not discuss DNA results with him or ask how his DNA might have ended up in C.C.'s underwear.

In 2001, appellant was underweight because he was using drugs.

## II. DISCUSSION

A. *Introduction*

Penal Code[1] section 667.61 provides that the punishment for a conviction of rape, oral copulation, and certain other specified crimes is 25 years to life in state prison where "[t]he defendant kidnapped the victim of the present offense and the movement of the victim substantially increased the risk of harm to the victim over and above that level of risk necessarily inherent in the underlying offense." (§ 667.61, subds. (a), (d)(2).)

The court delivered the following instruction on the kidnapping enhancement, patterned after CALCRIM No. 3175:

"If you find the defendant guilty of the crimes charged in Counts Two and Three, you must then decide whether, for each crime, the People have proved the additional allegation that the defendant kidnapped [C.C.], increasing the risk of harm to her. You must decide whether the People have proved this allegation for each crime and return a separate finding for each crime.

"To prove this allegation, the People must prove that:

"1. The defendant took, held, or detained [C.C.] by the use of force or by instilling reasonable fear;

"2. Using that force or fear, the defendant moved [C.C.] or made her move a substantial distance;

"3. The movement of [C.C.] substantially increased the risk of harm to her beyond that necessarily present in the crimes of rape and/or forced oral copulation.

" 'Substantial distance' means more than a slight or trivial distance. The movement must be more than merely incidental to the commission of rape and/or forced oral copulation. In deciding whether the distance was substantial and whether the movement substantially increased the risk of harm, you must consider all the circumstances relating to the movement." The verbal instruction tracked the written instruction submitted at trial.

---

[1] Unless otherwise noted, all statutory references are to the Penal Code.

Appellant complains that the instruction as written did not correctly inform the jury of the statutory requirements because without commas around the clause "or made [C.C.] move," the ending phrase "a substantial distance" does not modify "moved [C.C.]." Thus, he reasons that the written instruction did not apprise the jury that the "substantial distance" element applied if the defendant "moved [C.C.]," as contrasted to making her move, and therefore the case was submitted to the jury on an invalid alternative theory. Moreover, he contends the purported error was prejudicial because the "movement" element was not supported by overwhelming evidence, and the issue of whether the victim was moved a substantial distance was not resolved against appellant because the jury deadlocked on that issue in connection with the substantive kidnapping charge.

B. *Standard of Review*

The question whether a challenged instruction accurately conveys the legal requirements of a particular offense is one of law which we independently review. (*People v. Waidla* (2000) 22 Cal.4th 690, 733.) When scrutinizing an ambiguous or purportedly ambiguous instruction under the United States Constitution or California law, we inquire "whether there is a reasonable likelihood that the jury misconstrued or misapplied the words in violation" of such laws. (*People v. Clair* (1992) 2 Cal.4th 629, 662-663.) In deciding the issue, we consider the specific language challenged, the whole of the instructions, and the jury's findings. (*People v. Cain* (1995) 10 Cal.4th 1, 35-36.) Arguments of counsel may also shed light on whether the jury correctly understood the law as presented by the instructions as a whole. (See *People v. Kelly* (1992) 1 Cal.4th 495, 526-527.) Where the jury is misinstructed on an element of the offense, reversal is required unless we are able to conclude that the error was harmless beyond a reasonable doubt. (*Id.* at p. 527.)

Appellant did not object to the instruction as written or request a clarifying instruction. A defendant may not contend on appeal that jury instructions are impermissibly ambiguous without first requesting a clarifying instruction at trial. Failure to make such a request waives the claim on appeal. (*People v. Hart* (1999) 20 Cal.4th

5

546, 622.) Nonetheless, appellant urges that we review the issue of asserted instructional error on the merits because it affected his federal due process rights by misstating the movement element of the penalty provision. (§ 1259; *People v. Rogers* (2006) 39 Cal.4th 826, 881, fn. 28.) As we explain, at most we are dealing with an instruction infected with a bit of ambiguity due to grammatical imprecision—namely, the elimination of a comma between the two types of movement. Hence we examine the claim of error under the "reasonable likelihood" test.

C. *Analysis*

Appellant's contention that the instruction on the "movement" element of section 667.61, subdivision (d)(2), prejudicially misled the jury does not withstand scrutiny. To begin with, we cannot divine from a cold record whether the trial court read the instruction in a way that corrected the grammatical imprecision of the written instruction, that is, did the court pause between the term "moved [C.C.]" and the term "or made her move?" Such a pause would have signaled that there was a comma between the two elements as appellant asserts there must be. We presume the court properly performs its judicial duties, including knowing and applying the correct statutory law, and properly presenting the instructions to the jury. (See Evid. Code, § 664.)

Moreover, the instructions as a whole conveyed that the substantial distance applied whether the assailant moved the victim or made her move. The instruction explained that the People must prove that *the movement* of C.C. substantially increased the risk of harm and "the *movement* must be more than merely incidental to the commission" of the offense. Further, the jury was advised to "consider all the circumstances relating to *the movement*" in deciding whether the distance was substantial. (Italics added.) There is no logic to the argument that the jury would conclude that the substantial distance element applied only when making the victim move as opposed to actually moving the victim. We presume that jurors are intelligent persons, capable of correlating and understanding jury instructions. (*People v. Brock* (2006) 143 Cal.App.4th 1266, 1277.) A reasonable juror would not interpret the instruction as appellant suggests, namely that because there is no comma between the two forms of movement, the

6

substantial distance component does not apply if the perpetrator actually moved the victim.  Such an interpretation is nonsensical.

Additionally, the arguments of counsel assisted in eliminating any potential ambiguity.  The prosecutor's closing argument made it clear that the "substantial distance" factor applied to moving the victim, not just making the victim move:  "The defendant . . . took the person by force—I think it is real clear that that happened in this case.  [¶] *Moved the person a substantial distance*, beyond merely incidental to the commission of these crimes."  (Italics added.)

Defense counsel in turn underscored that the substantial distance factor pertained to appellant's act of moving C.C. to the alley:  "[W]e have to think that the reason the assailant dragged [C.C.] into the alley was for one purpose and that's sexual assault.  So I would suggest the element to focus on is element No. 3 . . . :  'Using that force or fear the defendant moved the other person or made the other person move,' . . . – this is the reason I bring this jury instruction up.   Made the other person move a substantial distance.  [¶] Now distance—substantial distance is actually defined . . . .  [¶] And I will tell you that I agree.  Forty to fifty feet is a substantial distance for anyone to go anywhere.  But remember when [C.C.] moved away from her estimation of how far it was in terms of number of feet and visualized the distance while she was on the witness stand?  You remember that distance . . . shrunk to the distance between where she was seated in the witness chair and the end of [the prosecutor's] table?  [¶] Is that in fact a substantial distance?  Are you convinced of that beyond a reasonable doubt?"

The prosecutor in rebuttal continued to present the evidence as showing that appellant moved the victim a substantial distance:  "[Defense counsel] indicated . . . there wasn't a substantial movement in the case. . . . We weren't there.  We weren't [C.C.].  It is a pretty substantial distance for her.  Took her out of public view.  Took her out of any hope for being helped.  Put Mr. Balinton in a position where no one would interfere with what he was doing.  [¶] Not too dissimilar to walking down the sidewalk, the door open, pull you in, close the door.  You could be in another world, folks.  No help is coming.

You are completely out of view. You are at the mercy of who dragged you there. Substantial distance for a sixteen-year old girl, absolutely."

Appellant argues that the instruction on the substantive kidnapping charge and the section 667.61, subdivision (d)(2), instruction both suffered the same grammatical error, but in the substantive kidnapping charge, element 4 clarified that any movement of the victim had to be for a distance more than incidental to the commission of the sex crime. From this appellant concludes: "Since a properly instructed jury dealing with the same issue was unable to agree whether the movement was for a substantial distance, there is at least a reasonable chance the true finding on [the section] 667.61[, subdivision] (d)(2) charge was based on the legally invalid theory that appellant moved [C.C.]."

Appellant's contention is not accurate. Some background is in order. The jury submitted a note asking the court to identify and clarify the phrase, " 'merely incidental to the commission of rape or oral copulation or sodomy' " with respect to the substantive kidnapping count. The court responded: " 'This is a question of fact for you to decide. You must consider the totality of circumstances in making this decision.' " Later, the jury asked: " 'What happens if we cannot reach a unanimous decision on a greater charge, [section] 209 [kidnapping for rape or other sex offenses], specifically on point No. 4?' " The court noted that item 4 states: " 'The other person was moved or made to move a distance beyond . . . that merely incidental to the commission of rape or oral copulation or sodomy.' " The court queried whether the jury was hopelessly deadlocked on that count; it was not, and thus deliberations continued, but ultimately the jury did deadlock and a mistrial was declared as to the substantive kidnapping charge.

We relate this sequence to illustrate that the jury was not confused, and apparently did not deadlock, on the issue of *the scope* of the substantial distance component of section 209, subdivision (b)—that is, did the component pertain to both forms of movement or just one? That point was covered in item three of the instruction, namely: "Using that force of fear, the defendant moved the other person or made the other person move a substantial distance." No question was asked about item three.

8

Moreover, that the jury hung on the substantive kidnapping charge does not suggest that it was confused. "An inconsistency may show no more than jury lenity, compromise, or mistake, none of which undermines the validity of a verdict." (*People v. Lewis* (2001) 25 Cal.4th 610, 656.) Inconsistent verdicts most likely result from compromise in the jury room, or the extension of mercy or leniency to the defendant. (*People v. Pahl* (1991) 226 Cal.App.3d 1651, 1656.) Section 954 could not be clearer: "An acquittal of one or more counts shall not be deemed an acquittal of any other count."

In sum, for all these reasons there is no reasonable likelihood the jury would have misconstrued or misapplied the instruction in the impermissible manner appellant suggests.

Appellant also urges that the omission of a comma did more than render the instruction ambiguous—it misstated an element of the charge, and thus the resulting instruction violated his due process rights. As we explained above, no reasonable juror would understand the instruction as removing the substantial movement element in circumstances where appellant actually moved the victim as opposed to making her move. There was no due process violation here.

### III.  DISPOSITION

We affirm the judgment.

9

_____
REARDON, J.


We concur:


_____
RUVOLO, P. J.


_____
BASKIN, J.*


* Judge of the Contra Costa Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.